**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YASHMEEN S. | : | |
| v. | : | NO. 26-CV-172 |
| FRANK BISIGNANO<br>Commissioner of Social Security | : | |

**O P I N I O N**

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

DATE: October 20, 2026

Yashmeen S. brings this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Income ("DIB"). She has filed a Request for review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be granted in part and the matter remanded for clarification of Yashmeen S.'s ability to interact with others.

I. *Factual and Procedural Background*

Yashmeen S. was born on September 1, 1979. Record at 193. She completed high school and some college. Record at 273. She worked most recently as a rural mail carrier, and as a laborer for a cabinetry manufacturer. *Id.*

On October 6, 2023, Yashmeen S. filed for DIB, alleging disability as of October 27, 2022, as a result of cervical radiculopathy, mononeuropathy of her left arm, degenerative disc disorder, thyroid nodules, and tonsillitis. Record at 193, 272. She later claimed mental health impairments as well. Record at 79. Her application was denied on April 6, 2024, and then again upon reconsideration, on July 12, 2024. Record at 79, 89. Yashmeen S. then requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). Record at 129.

A hearing was held in this case on January 16, 2025. Record at 36. On January 31, 2025, however, the ALJ issued a written decision denying benefits. Record at 17. On November 7, 2025, the Appeals Council denied Yashmeen S.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security. Record at 1. Yashmeen S. then filed this action.

II. *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC"), which reflects the most an individual can still do, despite any limitations. SSR 96-8p. The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

## III. *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that Yashmeen S. suffered from the severe impairments of degenerative disc disease of the cervical spine with radiculopathy of her left upper extremity, degenerative disc disease of the lumbar spine, anxiety, depression, and posttraumatic stress disorder ("PTSD"). Record at 20. He found that other impairments, such as gastrointestinal disorders, goiter, secondary headache disorder, and carpal tunnel syndrome were not severe. *Id*. The ALJ did not find that any impairment or any combination of impairments met or medically equaled a listed impairment. *Id*.

The ALJ concluded that Yashmeen S. retained the RFC to engage in work at the light exertional level, with the following limitations:

> Occasional use of hand controls with the non-dominant left upper extremity. Occasional reaching with the non-dominant left upper extremity. Frequent handling and fingering with the non-dominant left upper extremity. No climbing of ropes, ladders, or scaffolds. Occasional crawling. Can perform other postural activities no more than frequently. Frequent exposure to unprotected heights, moving mechanical parts, extreme temperatures, and vibration. Can understand, remember and carry out simple instructions. Limited to simple work-related decisions. Limited to frequent interaction with supervisors, co-workers, and the public.

Record at 22.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Yashmeen S. could not return to her prior work, but could work in such jobs as a marker, photocopy machine operator, or order caller. Record at 29. He determined, therefore, that she was not disabled. Record at 29-30.

In her Request for Review, Yashmeen S. argues that the ALJ erred in (1) finding that she was moderately limited in her ability to interact with others, but finding in the RFC that she could interact frequently with supervisors, co-workers, and the public; (2) crediting the opinion of the state agency physician who assessed her physical RFC, yet neglecting to include some of her environmental and postural limitations in his RFC assessment without explanation; (3) failing to adopt some findings made by the consulting examining physician regarding environmental and postural limitations; and (4) failing to consider how her non-severe impairments affected her RFC.

IV. *Discussion*

A. *The Ability to Interact with Others*

At the third stage of the sequential evaluation, the ALJ found Yashmeen S. to be moderately limited in her ability to interact with others. Record at 21. Nevertheless, he concluded in the RFC assessment that she was capable of "frequent" interaction with supervisors, co-workers, and the public. Record at 22. Although "frequent" interaction is less than "constant" interaction, it has been repeatedly found inconsistent with a moderate limitation in interacting with others. *Craft v. Bisignano*, Civ. A. No. 25-1800, 2026 WL 2905681 at *9 (M.D. Pa. Sep. 28, 2026); *Sean M. v. Bisignano*, Civ. A. No. 25-4533, 2026 WL 311577 at *3 (E.D. Pa. Feb. 5, 2026); *Donna W. v. Kijakazi*, Civ. A. No. 21-11285, 2023 WL 869097 at *9 (D.N.J. Jan. 27, 2023).

Undoubtedly, Yashmeen S. is correct in arguing that the ALJ erred in this respect. Further, this is a material error that requires remand for clarification.

The ALJ noted accurately that Yashmeen S. had no mental health treatment during the relevant time period. Record at 25, 40, 497. He also noted that Yashmeen S. did not testify as to mental limitations at her hearing. Record at 21, 36-53. Nor did Yashmeen S. list mental impairments in her application for benefits. Record at 272. When asked in her function report: "How do your illnesses, injuries or conditions limit your ability to work?" she described only weakness and pain in her neck and left arm. Record at 288.

Nevertheless, the ALJ appears to be mistaken in writing that Yashmeen S. had no medication for mental health issues in the relevant period, as she told consulting examiner Gregory Coleman, Psy.D., that she took amitriptyline, an antidepressant. Record at 498. This is confirmed in the records from her general practitioner, Manish Shrestha, M.D, which include amitriptyline in the prescription list. Record at 358.

Further, as the ALJ observed, Yashmeen S. told Dr. Coleman that she was angry at everyone, and had a difficult relationship with her boyfriend. Record at 21, 499, 500. She also told Dr. Coleman that she had a significant legal history, including a 2022 arrest for assaulting a boyfriend. Record at 498. Dr. Coleman diagnosed Yashmeen S. with a "disruptive mood dysregulation disorder," borderline personality disorder, and "posttraumatic stress disorder per claimant report." Record at 500. He indicated that she had moderate limitations in interacting with the public, supervisors, and coworkers, as well as in the ability to respond appropriately to usual work situations and to changes in a routine work setting. Record at 503. The ALJ wrote that Dr. Coleman's opinion was "persuasive" in this regard. Record at 27-8.

Stephen Michael Timchack, Psy.D., who reviewed Yashmeen S.'s medical records for the state agency, also concluded that she had a moderate limitation in interacting with others, although Richard Frederic Small, Ph.D., the doctor who reviewed her record on reconsideration found that her limitation in that area was only mild. Record at 82, 86, 92. The ALJ found Dr. Timchack's report "generally persuasive." Record at 27. He rejected Dr. Small's opinion for failing to adequately consider Dr. Coleman's findings. *Id.*

An ALJ must provide sufficient development of the record and explanation of his or her findings to permit meaningful judicial review. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000). This does not mean that he is required to use particular language or adhere to a particular format. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). However, the ALJ's decision must permit a reviewing court to trace the path of his reasoning. 82 Fed. Reg. 5844-01, 5858, 2017 WL 168819 (2017); *and see Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995), *and Robert L. v. Comm'r Soc. Sec.*, Civ. A. No. 25-16214, 2026 WL 2874960 at *6 (D.N.J. Sep. 24, 2026).

On this record, it is not possible to trace the path of the ALJ's reasoning. The ALJ accepted Dr. Coleman's suggestion that Yashmeen S. had a moderate limitation in her ability to interact with others. His adoption of Dr. Timchack's opinion over Dr. Small's indicates that this was his reasoned opinion, and not an error or misunderstanding. Yet he found Yashmeen S. capable of a degree of interaction which is customarily found to be in excess of what is possible for a claimant with a moderate limitation. There is no evidence in the record about the amount of interaction needed in the jobs the ALJ found suitable for Yashmeen S., (marker, photocopy machine operator, and order caller) and neither party has provided this information to the Court.

Therefore, it cannot be said that the ALJ's error was harmless. Remand is required for clarification on this point.

B. *Dr. Gustitis*

In his decision, the ALJ discussed the opinions of the two state agency physicians, Anne Heather Prosperi, D.O., who reviewed Yashmeen S.'s medical records initially, and Gaye Christina Gustitis, D.O., who reviewed them on remand. Record at 26. The ALJ found Dr. Prosperi's opinions partially persuasive. *Id.* He wrote that subsequent evidence regarding Yashmeen S.'s left upper extremity impairment and asthma warranted greater manipulative, postural, and environmental limitations than Dr. Prosperi had assessed. *Id.*

The ALJ then wrote that Dr. Gustitis's opinions were "more persuasive." *Id.* Dr. Gustitis found that Yashmeen S. could perform work at the light exertion level, but could never crawl or climb ladders, ropes, or scaffolds, and could perform other postural maneuvers only occasionally. Record at 94. She was limited in her ability to reach with her left upper extremity. Record at 95. She also needed to "avoid concentrated exposure" to extreme cold, wetness, vibration, pulmonary irritants and workplace hazards. *Id.* The ALJ wrote that he would impose additional limitations in handling, fingering, and using hand controls with the left hand. Record at 27.

In his RFC assessment, the ALJ wrote that Yashmeen D. could "frequently" be exposed to unprotected heights, moving mechanical parts, extreme temperatures, and vibration. Record at 22. He wrote that Yashmeen S. could never climb ropes, ladders, or scaffolds, but that she could occasionally crawl, and could perform other postural activities frequently. *Id.* "Frequent" is equivalent to 1/3 to 2/3 of the workday, according to the SCO ("Selected Characteristics of

Occupations Defined in the Revised Dictionary of Occupational Titles"). SCO, App. C at C–3. By contrast, "constant" means from 2/3 to the entire workday. *Id*.

Yashmeen S. argues that, having accepted Dr. Gustitis's opinions, the ALJ erred in imposing less stringent limitations. However, the fact that the ALJ found Dr. Gustitis's opinion more persuasive than Dr. Prosperi's does not mean that he had to – or even said that he would – adopt every one of her findings. An ALJ is to review all the evidence of record, and there is no requirement that a physician have made every specific finding that the ALJ includes in the RFC. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).

As for the environmental limitations, which appear to address Yashmeen S.'s asthma, the ALJ was entitled to take into consideration not only Dr. Gustitis's opinion, but also the fact that Yashmeen S. did not name asthma in her application for benefits, and did not testify about it at her hearing. Record at 272. Nor did she mention it to a Worker's Compensation doctor who examined her on May 21, 2024. Record at 634-7. Asthma is mentioned only in Yashmeen S.'s February 6, 2024, consultative examination, where she told Marielle Stone, M.D. that she had an attack the previous month. Record at 473. She said that "she did not use an albuterol inhaler since she ran out." *Id*. The ALJ reported this in his decision, also noting Yashmeen S.'s statement that she smoked half a pack of cigarettes per day. Record at 24, 474.

Regarding the postural limitations, the ALJ specifically noted that a June 29, 2023, MRI of Yashmeen S.'s cervical spine showed only mild spondylosis at C4-5 and C5-6. Record at 24, 515. There was no fracture or malalignment, no disc herniation, and no "high-grade" stenosis. Record at 462, 505. The ALJ noted that nerve testing from November 2, 2023, showed no evidence of any abnormality, although a second EMG, performed on July 26, 2024, did find cervical radiculopathy involving the left C5-6 nerve root, and "mild" bilateral carpal tunnel

syndrome. Record at 24-5, 465, 813. According to Dr. Stone, an x-ray of Yashmeen S.'s lumbar spine showed moderate degenerative disc disease at L5-S1, but no other abnormality. Record at 476. The ALJ noted this as well. Record at 25.

Further, when Dr. Stone examined Yashmeen S. on February 2, 2024, she was found to walk with a normal gait and stance. Record at 475. Straight-leg raise testing was negative bilaterally, indicating an absence of radiculopathy in the lumbar spine. *Id*. Yashmeen S. had full, 5/5, strength in all four limbs, and normal reflexes. *Id*. Her range of motion was decreased in the left shoulder, but was otherwise normal. Record at 487-490. The ALJ discussed this, too, in his decision. Record at 24-5.

What is more, Yashmeen S. has not shown that any of the three jobs identified by the ALJ as suitable for her involve concentrated exposure to one of the environmental factors named by Dr. Gustitis, or require frequent postural maneuvers.

All of the foregoing is consistent with the ALJ's limitation of Yashmeen S. to light work, with limited use of the left upper extremity, and postural activities that were somewhat, though not extremely, limited. Record at 22. The ALJ's decision is more than sufficient to permit adequate review of his decision in this regard. *See Burnett*, *supra*. Therefore, it is not necessary for the ALJ to revisit this subject on remand.

C. *Dr. Stone*

As noted above, Dr. Stone, the consulting examiner, saw Yashmeen S. on February 6, 2024. As is also noted above, on physical examination, Dr. Stone found Yashmeen S. to walk with a normal gait and stance, and to have full strength in all four limbs and normal reflexes. Record at 475. Straight-leg raising testing was negative on both sides, supine and seated. *Id*. Her range of motion was normal, except for in the left shoulder. Record at 487-490.

Dr. Stone found that Yashmeen S. could sit for two hours at a time, for a total of six hours in an 8-hour workday. Record at 480. She could stand and walk for one hour each, for a total of four hours each. *Id*. However, Dr. Stone found that, although Yashmeen S. could lift and carry ten pounds frequently, she could never lift or carry any greater weight. Record at 481. She attributed this to the decreased range of motion in Yashmeen S.'s left shoulder, and the pain in her neck, left upper extremity, and low back. *Id*. Dr. Stone indicated that Yashmeen S. could climb ramps frequently, and stairs occasionally. Record at 483. She could occasionally kneel and crouch. *Id*. She could never climb ladders or scaffolds, balance, stoop, or crawl. *Id*. She could never be exposed to unprotected heights, moving mechanical parts, extreme cold, extreme heat, or vibrations. Record at 484.

The ALJ wrote: "This opinion is somewhat persuasive. However, Dr. Stone's examination does not support the degree of limitation in lifting and carrying. The overall record is also not consistent with the degree of postural and environmental limitation assessed." Record at 27. Yashmeen S. argues that the ALJ erred in failing to specify what evidence about the "degree of postural and environmental limitation" led him to find that Dr. Stone's limitations in these areas were inconsistent with the record.

In the previous section, however, it is noted that there is virtually no evidence of treatment for asthma in the record. The only reference is Yashmeen S.'s comment to Dr. Stone that she had an asthma attack the previous month. Record at 473. She conceded then that she was not using her inhaler, and was smoking ten cigarettes per day. *Id*. This was reported by the ALJ. Record at 24. It is sufficient to support his conclusion that the environmental limitations imposed by Dr. Stone were inconsistent with the overall record.

Similarly, the record evidence supporting the ALJ's decision that Yashmeen S. needed fewer postural limitations than found by Dr. Stone includes Dr. Stone's own physical examination results, which were entirely normal other than in the left shoulder. Record at 475, 487. Specifically, as to Yashmeen S.'s ability to lift and carry, it is notable that she was found to have full strength even in her left arm. Record at 475. The supportive evidence also included the results of objective testing, which revealed abnormalities of the cervical and lumbar spine, but not extensive ones. Record at 505, 515, 465, 476, 813. The ALJ reviewed this evidence in his decision, so it is easy to trace his reasoning. Record at 24, 25; 82 Fed. Reg. 5844-01, *supra*. As such, Yashmeen S. has not shown an error in the RFC's treatment of Dr. Stone's report.

D. *The Non-Severe Impairments*

The ALJ found some of the impairments mentioned in the medical records to be non-severe. Record at 20. These included "secondary headache disorder," which includes migraine headaches, and carpal tunnel syndrome. *Id*. He added that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." *Id*. The ALJ did not, however, mention headache again in his decision. He mentioned carpal tunnel syndrome only in remarking that it was found in a July 26, 2024, EMG/Nerve Conduction Study. Record at 25.

Yashmeen S. points out that even non-severe impairments should be accommodated in an RFC assessment. SSR 96-8p. She argues that the ALJ erred in failing to explain the functional impact of her headaches or the bilateral carpal tunnel syndrome.

However, the ALJ did note that the July 26, 2024, objective testing results called Yashmeen S.'s carpal tunnel syndrome "mild." Record at 25, 813. At her hearing, Yashmeen S. testified only to pain and weakness in her left arm. Record at 47. Similarly, in her Function

Report, she mentioned weakness and numbness only in her left arm and hand. Record at 288. As above, the ALJ limited Yashmeen S.'s use of her left upper extremity in her RFC assessment. Record at 22.

Yashmeen S. did testify at her hearing that her cervical spine impairment caused migraine headaches. Record at 47. However, she did not describe their frequency or intensity. At the time of the hearing, she was not taking any pain medication at all, although earlier notes from her general practitioner mention gabapentin and ibuprofen. Record at 50, 358-9. There is no evidence in the record of any special treatment for headaches, or treatment by a headache specialist. Yashmeen S. did not mention headaches in her application for benefits, or in her Function Report. Record at 272, 288.

Given this evidence, there is no reason to believe that the ALJ would impose any further limitations even if he was asked to provide further discussion of Yashmeen S.'s headaches and carpal tunnel syndrome. Remand is not required where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Therefore, even if the ALJ erred in this regard, he need not address this issue upon remand.

V. *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be granted in part and the matter remanded to the Agency for further consideration of Yashmeen S.'s ability to interact with others.

BY THE COURT:

*/s/ Scott W. Reid*

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE